UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDRA FRANK,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____

Case No. 2:20-cv-962-SPC-NPM

## REPORT AND RECOMMENDATION

Plaintiff Sandra Frank seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 15), [1] and the parties filed a Joint Memorandum (Doc. 22). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.   Eligibility for Disability Benefits and the Administration's Decision

### A.   Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

### B.    Factual and procedural history

On May 14, 2018, Frank applied for supplemental security income. (Tr. 100, 113, 183-191). She asserted an amended onset date of May 14, 2018,[5] alleging disability due to a heart condition, type 2 diabetes, and macular degeneration. (Tr. 49, 91-92, 101-102, 183). As of the alleged onset date, Frank was 49 years old, and

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

[5] The initially alleged onset date was June 10, 2016. (Tr. 91-92, 101-102, 183). It was later amended to mirror the application date. (Tr. 49, 213).

she had a high school education. (Tr. 51, 91, 101, 220). Her past work included a job as a convenience store assistant manager. (Tr. 53-56, 220).

Frank's application was administratively denied initially on July 25, 2018, and upon reconsideration on November 5, 2018. (Tr. 91-100, 101-113). At Frank's request, Administrative Law Judge Eric Anschuetz held a hearing on January 16, 2020. (Tr. 45-90, 130). The ALJ issued an unfavorable decision on March 11, 2020, finding Frank not disabled since May 14, 2018. (Tr. 28-39).

Frank's timely request for review by the administration's Appeals Council was denied. (Tr. 17-22). Frank then brought the matter to this court, and the case is ripe for judicial review.

### C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400(b). Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there is a sufficient number of jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. §§ 416.912, 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial

burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, "the overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Frank had not engaged in substantial gainful activity since May 14, 2018. (Tr. 33). At step two, the ALJ characterized Frank's severe impairments as coronary artery disease, macular degeneration, and diabetes mellitus. (Tr. 33). At step three, the ALJ determined Frank did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 35).

As the predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR [§] 416.967(b) except the individual can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk 4 hours in an 8-hour workday; sit 6 hours in an 8-hour workday; never climb ladders, ropes or scaffolds; frequently climb ramps and stairs; frequently balance and occasionally stoop, kneel, crouch and crawl. She can do no commercial driving and no jobs that require 20/20 vision even if corrected by glasses. She must avoid workplace hazards such as unprotected heights and rapidly moving workplace machinery. She is limited to simple tasks.

(Tr. 35). Consequently, at step four, the ALJ determined Frank was not capable of performing her past relevant work. (Tr. 38). At step five, the ALJ found Frank could perform other work that exists in significant numbers in the national economy. In support, a vocational expert opined during the ALJ hearing that three occupations

represent the kinds of jobs that an individual with Frank's age, education, work experience, and RFC could perform:

(1)    Cashier (DOT #211.462-010), light, SVP 2 unskilled with 574,000 jobs in the national economy;

(2)    Routing Clerk (DOT #222.687-022), light, SVP 2 unskilled with 133,000 jobs in the national economy; and

(3)    Parking Lot Attendant (DOT DOT#915.473-010), light, SVP 2 unskilled with 33,000 jobs in the national economy.

(Tr. 38-39).[6]

## II.    Analysis

Frank's appeal presents the following questions for review:

(1)    whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers;

(2)    whether the ALJ failed to adequately develop the record; and

(3)    whether the ALJ erred when assessing opinion evidence.

(Doc. 22, pp. 6-7, 9-11, 22).

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

A.      **Standard of review**

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the

agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.      Whether remand is required because, while this case was adjudicated by the administration, the statute governing the removal of the Commissioner violated the separation of powers**

Frank argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner (42 U.S.C. § 902(a)(3)). (Doc. 22, pp. 23-26). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 22, pp. 26-27). But Frank's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Frank has neither shown a nexus between the removal restrictions and her claim, nor has she plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused her harm.

"Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v.*

*Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. … I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone …. When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

For these reasons, this court, like its sister courts throughout the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), report and recommendation adopted, No. 2:20-cv-872-SPC-MRM, 2022 WL 61217 (M.D. Fla. Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838 (M.D. Fla. Nov. 23, 2021), report and recommendation adopted, No. 6:20-cv-2357-GKS-EJK, 2022 WL 88160 (M.D. Fla. Jan. 7, 2022).

### C.    Whether the ALJ failed to adequately develop the record

A claimant bears the burden of proving she is disabled and is responsible "for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)). However, an ALJ "has a basic duty to develop a full and fair record." *Id.* (citing 20 C.F.R. 416.912(d)); *see also* 20

C.F.R. § 416.945(a)(3) ("However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources."). This duty applies whether or not the claimant is represented by counsel. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Generally, the duty to develop the record is required due to the inquisitorial nature of the administrative proceedings. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018). A court will remand for further factual development of the record when the record contains evidentiary gaps that result in unfairness or clear prejudice. *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Frank contends the ALJ failed in his duty to develop the record as to her heart condition and, therefore, improperly relied on his own lay judgment in assessing the RFC. Relatedly, Frank characterizes the ALJ's statements during the administrative hearing as improper lay opinion when the ALJ suggested Frank's heart and kidney problems arose serially, rather than in combination. In particular, Frank claims the ALJ appeared to believe Frank had heart problems, then the heart problems were resolved, then Frank had kidney problems, then the kidney problems were resolved, and finally she had heart problems again. Not only does Frank contend the ALJ substituted his lay opinion for objective evidence, but she also claims the ALJ failed

to consider whether her impairments were disabling in combination. (Doc. 22, pp. 10-13).

Frank's challenges as to the ALJ's statements during the hearing are misplaced, as the written decision is before this court for review. 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the *decision* of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added). Even so, the ALJ's questioning about Frank's condition is necessarily part of the inquisitorial nature of the proceedings and indicates questions about the record that were critical to the disability determination. Importantly, Frank testified she had three heart attacks ("myocardial infarctions") in 2008, 2014, and 2019. (Tr. 64). The ALJ later referred to a July 19, 2018 consultative examination by Dr. Rosenberg, in which he reviewed some of Frank's medical records and examined her. (Tr. 73-76). In Rosenberg's review, he noted Frank's history of myocardial infarction and that a stress test performed in June 2018 showed no evidence of ischemia or prior infarction and there were no myocardial perfusion defects noted. (Tr. 900).

The ALJ necessarily inquired about this apparently conflicting evidence of a history of having three heart attacks and a doctor's observation that a recent stress test was negative for prior infarction. (Tr. 73-76). The ALJ inquired whether this

evidence conveyed that the four stents she received in 2012 and 2013 helped treat Frank's heart condition. (Tr. 75). And Frank's counsel responded: "Yes, … there was nothing wrong with her heart at that time. She had the stents in and there wasn't a problem with her heart at that time." (Tr. 75). Both the ALJ and Frank's counsel discussed and agreed that Frank had heart problems, which "level[ed] off," then Frank had kidney problems, which "level[ed] off," and finally her heart condition recurred. (Tr. 75-76).

Characterizing this back-and-forth discussion between the ALJ and her counsel during the hearing as substituting his layman's perspective for objective evidence is incorrect. (Doc. 22, p. 10). Rather, it shows the ALJ fulfilled his duty to inquire into Frank's condition. And Frank's suggestion that the ALJ's questions during the hearing indicate he did not consider all of her impairments in combination have no merit. Rather, having received more clarity about her conditions, the ALJ was able to issue a decision showing he properly considered all of Frank's conditions. The ALJ also acknowledged the requirement that he consider Frank's impairments in combination and stated that he considered the entire record, as well as all of her impairments and symptoms. (Tr. 33-36); *see Wilson v. Barnhart*, 284 F.3d 1219, 1224-1225 (11th Cir. 2002) (holding that the following statement by an ALJ constituted sufficient evidence he considered the combined effects of a claimant's impairments: "[T]he medical evidence establishes that [Wilson] had

[several injuries] which constitute a 'severe impairment', but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.").

Moreover, Frank argues the ALJ did not adequately consider her heart impairment or resulting limitations. (Doc. 22, pp. 8, 11-12). Specifically, Frank contends the ALJ did not address certain medical evidence of record, including hospitalizations in June 2017 and April 2018 (Tr. 677-684); emergency room visits (Tr. 455-462, 947-967, 971-1025); or a September 2019 coronary artery bypass graft (Tr. 954). (Doc. 22, p. 8). She also claims the ALJ did not adequately consider her kidney impairment, noting, for example, that the ALJ did not reference any urology treatment notes (Tr. 732-735, 738-740, 774-777, 783-785). (Doc. 22, p. 8).

As an initial matter, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). While the ALJ did not specifically discuss Frank's June 2017 hospitalization, that treatment note occurred about one year before May 14, 2018— the date of Frank's disability application and amended onset date. And that hospitalization primarily concerned Frank's kidney issues, as she reported fever and a urinary tract infection, and she was treated with cystoscopy, right retrograde pyelogram, and insertion of right ureteral stent. (*See, e.g.*, Tr. 677-683). Frank also failed to describe the relevance of the April 2018 hospitalization. (*See* Doc. 16, p. 4)

13

("Plaintiff shall set forth all facts on which Plaintiff will rely to support Plaintiff's position as to each disputed issue, supported by a reference to the page numbers in the transcript at which evidence establishing each fact can be found."). But a May 8, 2018, discharge summary indicates that Frank's hospitalization also related to kidney stones. (Tr. 466, 469, 472, 477, 491-492).

Contrary to Frank's suggestion, the ALJ specifically considered Frank's status post kidney stones. (Tr. 34). He acknowledged Frank's history of kidney stones that required removal. But at the hearing, Frank testified she was not currently being treated by a nephrologist, and the only time she was treated by a nephrologist was when she had kidney stones in 2018. (Tr. 34, 72-73). Indeed, Frank did not even allege kidney problems as an impairment in her disability application. (*See* Tr. 91-92, 101-102).[7] Accordingly, the ALJ found that kidney problems were non-severe at step two because they did not impose significant functional limitations. (Tr. 34).

And Frank does not adequately challenge this finding—rather, she summarily claims the step two findings are not articulated, not explained, and not supported by citation to evidence. (Doc. 22, p. 9); *see, e.g.*, *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (holding that "[i]ssues raised in a perfunctory

---

[7] In summarizing the evidence, Frank misstated that she alleged disability due to a kidney impairment (Doc. 22, p. 3 (citing Tr. 183, 219)), but her application omits any reference to a kidney impairment. (*E.g.*, Tr. 91-92, 101-102, 219). Regardless, the ALJ considered Frank's kidney impairment and found it was non-severe. (Tr. 34).

manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); *Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904-905 (11th Cir. 2017) (same). Even so, Frank fails to identify treatment notes indicating her kidney issues caused any on-going work-related limitations. "[A] diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

Additionally, the ALJ properly considered Frank's heart impairment. He found coronary artery disease was a severe impairment at step two. (Tr. 33). In so finding, the ALJ noted Frank's treatment notes show she has coronary artery disease with stent replacement and prior myocardial infarction. As to symptoms, the ALJ noted Frank complained of chest pain and shortness of breath at times. And contrary to Frank's argument, the ALJ expressly referred to the September 5, 2019 treatment notes, remarking that Frank was treated at that time for non-ST elevation myocardial infarction with a diagnosis of coronary artery disease involving native coronary artery of native heart with angina pectoris. A cardiac catheterization from that time showed diffuse triple vessel coronary artery disease. And finally, the ALJ observed

that Frank was treated with coronary artery bypass grafting. (Tr. 33 (citing Tr. 805-814, 969-1025)).

Frank appears to take issue with the fact that the ALJ did not mention the September 2019 note concerning her emergency room visit or hospital admission. But an ALJ need not *describe* every notation in every piece of evidence—rather, the court reviews an ALJ's decision for substantial evidence indicating he properly *considered* the evidence in accordance with the regulations. *See* 20 C.F.R. §§ 416.913(a), 416.920b. Here, the ALJ fulfilled that duty as he described pertinent aspects of those treatment notes. And he ultimately found coronary artery disease a severe impairment. Finally, the ALJ accounted for this impairment in the RFC by limiting Frank to light work with additional exertional limitations. (Tr. 35).

When formulating Frank's RFC, the ALJ further considered Frank's heart impairment. He found her statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the medical record and explained why. (Tr. 36). For example, Frank's myocardial stress test from June 2018 was unremarkable—it showed Frank's left ventricular ejection fraction was normal. The stress test results showed that neither chest pain nor arrhythmias occurred. Also, the results stated that compared to a prior study from June 2013, inferior ischemia was no longer present. (Tr. 36 (citing 805-809); *see also* Tr. 37, 900).

The ALJ further explained that Frank could perform activities of daily living without assistance, such as cooking three meals per day, doing daily household chores, and shopping for her needs. (Tr. 36, 901). Additionally, a January 2019 primary care treatment note by Linda Yarris-Ewert, D.O., indicates Frank reported she had been riding a bicycle and that symptoms of fatigue had improved. (Tr. 36, 910, 914). Dr. Yarris-Ewert's treatment notes consistently reflect that Frank denied chest pain, shortness of breath, and labored breathing on exertion. (Tr. 36, 914 (January 25, 2019), 919 (October 19, 2018), 925 (June 15, 2018)).

In sum, Frank has not identified any gap in the record or made an attempt to show any prejudice therefrom, and the ALJ did not, as Frank contends, impermissibly base the disability determination on his own lay opinion.

### D.    Whether the ALJ erred when assessing opinion evidence

Frank contends the ALJ erred when he found the opinion of her treating physician unpersuasive. (Doc. 22, pp. 7, 13). Frank's relationship with her treating physician—Dr. Yarris-Ewert—began after her first heart attack around 2008. (Tr. 64, 69). During the relevant time frame, Frank denied chest pain, shortness of breath, or labored breathing on exertion during visits with Yarris-Ewert on June 15, 2018 (Tr. 925), October 19, 2018 (Tr. 919), and January 25, 2019 (Tr. 914). Cardiovascular findings on examination were normal during these visits. (Tr. 914, 920, 925). In June 2018, Frank reported "feeling better" and having more energy.

(Tr. 921, 925). And in January 2019, Yarris-Ewert's treatment notes reflect Frank had been riding a bicycle. (Tr. 910).

On December 27, 2019, Yarris-Ewert completed a physical capacity evaluation. (Tr. 1027-1028). She indicated in her responses that Frank could stand and walk a total of one hour in an eight-hour workday, could sit two to three hours in an eight-hour workday, and could not lift and carry any weight at all. (Tr. 1027). She stated Frank could not bend, squat, crawl or climb at all since these activities make her chest hurt. (Tr. 1028). And finally, she opined Frank could not reach above her shoulder due to chest wall strain. (Tr. 1028). Yarris-Ewert explained that Frank had shortness of breath with exertion and fatigues easily doing activities of daily living. (Tr. 1028).

For disability cases filed on or after March 27, 2017—such as this one—the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or judgment about the nature and severity of an impairment. Rather, it refers only to statements about what the claimant can still do despite any impairment(s), and whether there are any limitations in the claimant's abilities to perform the various demands of work or adapt to work-related conditions. *See* 20 C.F.R. § 416.913(a)(2). Furthermore, medical opinions related to claims filed on or after March 27, 2017, are subject to a different assessment about their persuasiveness rather than their weight. *See* 20 C.F.R. §§ 416.920c, 416.927(c).

Because a disability finding hinges on functional limitations and not just the existence of impairments, the ALJ needed to assess Yarris-Ewert's opinions about Frank's abilities despite, and limitations because of, her impairments. *See* 20 C.F.R. § 416.913(a)(2). These opinions are assessed for their persuasiveness based on the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(a)-(c). Yarris-Ewert's judgments about the nature and severity of Frank's impairments, Frank's medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis merely constitute "other medical evidence" in the record. 20 C.F.R. § 416.913(a)(3).

The ALJ found Yarris-Ewert's opinions unpersuasive because they are not supported by her own treatment notes. The ALJ observed that Yarris-Ewert's treatment notes consistently reflect that Frank denied chest pain, shortness of breath and labored breathing on exertion. The ALJ further found that the notes are inconsistent with the medical evidence of record viewed in its entirety. (Tr. 38).

Frank first contends that the ALJ failed to cite evidence of the purported inconsistencies. (Doc. 22, p. 7). But as previously discussed, the ALJ properly

developed the record in the remainder of the decision. Frank next takes issue with the fact that the "ALJ rejected every medical opinion as to [Frank's] limitations as not persuasive." (Doc. 22, p. 9). But this does not constitute error. While an ALJ considers medical opinions of record in assessing a claimant's RFC, it is the ALJ's responsibility to determine the ultimate issue of a claimant's RFC, not the doctors. *See* 20 C.F.R. §§ 416.912(a)(2)(iii), 416.945(a), 416.946(c). In fact, there is no requirement that an ALJ base the RFC finding on a medical source's opinion. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007) (rejecting plaintiff's argument that the ALJ's RFC finding must be based on a physician's opinion). The assessment of a claimant's RFC is "based on all the relevant evidence in [the claimant's] case record" and not simply on medical opinions. *See* 20 C.F.R. § 416.945(a)(1); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."). The ALJ properly developed the record and cited substantial evidence for rejecting Yarris-Ewert's opinions indicating extreme limitations, which were unsupported and inconsistent with the record as a whole.

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence and

reflects no legal error or only harmless error. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in defendant's favor.

Reported in Fort Myers, Florida, on February 10, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE


## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**